Hill v. Scott.

WILLIAM HILL, Respondent, v. ROBERT R. SCOTT, Appellant.

### St. Louis Court of Appeals, December 17, 1889.

1. **Justice of the Peace:** SUFFICIENCY OF STATEMENT OF CAUSE OF ACTION. A statement of the plaintiff's cause of action is sufficient, if it is definite enough to identify the ground of action, and to bar a future recovery for the same cause.

2. **Negligence, Inference of.** While negligence must be proven, it may be inferred, when the thing causing an accident is in the management of the defendant or his servants, and the accident is such, as, in the ordinary course of matters, does not happen, if those having the management use proper care.

3. **Jury:** RIGHT TO DISCREDIT TESTIMONY. A jury is not bound to credit testimony of unimpeached witnesses, though not denied by any other witness, if there be circumstantial evidence inconsistent with such testimony.

4. **Practice, Trial:** INSTRUCTIONS. The use of the term "preponderance of the evidence," in an instruction, in connection with a proper definition of its meaning, is not error.

*Appeal from the St. Louis City Circuit Court.* —HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Kerr & Kerr*, for the appellant.

The petition filed stated no cause of action, in that it failed to allege any negligent act or omission of defendant, contributing to the injury complained of. *Lionberger v. Pohlman*, 16 Mo. App. 392; *Taylor v. Fox*, 16 Mo. App. 527; *Gurley v. Railroad*, 93 Mo. 445. The admissions of defendant, and the evidence, fail to show any negligence on the part of defendant, or any one in his employ. *Pleasant v. Fant*, 22 Wall. 116; *Gurley v. Railroad*, 93 Mo. 445; Shear. & Redf. Neg.

[4 Ed.] secs. 15, 634. The instructions asked by defendant, as to preponderance of evidence, should have been given. *Shine v. Tucker*, 37 Ark. 580; *Marshall v. Ins. Co.*, 43 Mo. 588; *Davis v. Railroad*, 13 Mo. App. 456.

*Rassiuer & Schnurmacher*, for the respondent.

The petition was filed before a justice of the peace where extreme technical accuracy in pleading is not required. The plaintiff should not have been non-suited. He showed that he was using proper care and caution, and was run down, without any fault on his part, by a horse owned by the defendant, which was running at an unusual pace, on the wrong side of a public street. This made a *prima facie* case, and shifted the burden upon defendant, to show that he was free from blame. *Case of the Louisiana*, 3 Wall. 164; *Hummell v. Webster*, Brightly's Rep. 133; *Ficken v. Jones*, 28 Cal. 618.

THOMPSON, J., delivered the opinion of the court.

This action was commenced before a justice of the peace, upon a statement that, on the eighteenth of February, 1886, the plaintiff was lawfully and carefully driving southward upon the west side of Jefferson avenue, a public street in the city of St. Louis, between Lafayette and Geyer avenues, when the defendant's horse, which was negligently running at large upon said street, without any one to control or guide it, ran into and collided with the plaintiff's horse and buggy, throwing the plaintiff and his wife to the ground, and injuring the plaintiff's horse, buggy and harness to the extent of one hundred dollars, for which judgment is asked.

It was admitted by counsel for the defendant at the trial that the horse and buggy, which collided with the plaintiff's horse and buggy, belonged to the defendant,

and that the plaintiff sustained damages to the extent of one hundred dollars. The cause was tried before a jury, and resulted in a verdict and judgment for the plaintiff for one hundred dollars, from which the defendant prosecutes this appeal.

I.    The first assignment of error is that the plaintiff should have been non-suited at the close of his testimony, because the petition fails to state a cause of action, in not averring any negligent act or omission of the defendant contributing to the injury complained of. The action was commenced before a justice of the peace, and the petition is sufficient to identify the ground of action and bar a future recovery for the same cause. It, therefore, meets the rule, which excuses greater definiteness of statement in actions commenced before those popular tribunals.

·    II.    The next error which is assigned is that the case should have been withdrawn from the jury because there was no evidence of negligence on the part of the defendant. · The evidence substantially was that the plaintiff and his wife, returning from a funeral, were driving southward in a buggy on the line of Jefferson avenue near Geyer avenue, in the city of St. Louis, when a horse and buggy belonging to the defendant, but without a driver, came running rapidly towards them, and ran into them, crushing the plaintiff's buggy down, and injuring it to the extent admitted. The plaintiff offered no evidence tending to show how the defendant's horse and buggy came to be thus loose upon the streets. The question thus presented at the close of the plaintiff's evidence was, whether the fact of a man's horse and buggy being loose upon the streets of a populous city, without a driver, is presumptive evidence of negligence. The court decided this question in the affirmative, by refusing an instruction in the nature of a demurrer to the evidence. If the case had stopped here it would present a much closer question than is

presented by the record as it stands, and we need not speculate as to what our decision of the question would be, because it did not then appear that the horse had escaped from the defendant's personal custody.

The evidence, given for the defendant, showed that the defendant and his son, on the night when the accident happened, drove the horse in question from the defendant's livery stable on Elm street to the defendant's residence on St. Ange avenue in St. Louis, where the defendant and his son alighted to get their supper, at about six o'clock in the evening; that the defendant's son tied the horse securely with a hitching strap in the usual manner; that the defendant and his son then removed the whip and lap robe and went into the house, leaving the horse blanketed and thus hitched; that, when the defendant came out after his supper, the horse and buggy were gone; that he immediately instituted search for them, notifying the police; and that, about nine o'clock, he was notified that they had been found and taken to the police station at Lafayette Park. The defendant's evidence was, also, to the effect that the mare was blind, but was a good traveler and spirited. The distance from the place where the mare was hitched in front of the defendant's house, to the point of the collision and accident, was about a mile, and the direction from defendant's residence was southwest. At the time of the collision the plaintiff was driving on the west side of Jefferson avenue, according to the customary rule of the road, toward the south, and the mare was running violently toward the north on the same side of the street. A map put in evidence shows that, in order to travel that distance, the mare must have turned several corners and completely changed the course which she probably took when she started; for, when hitched, she was headed south.

We take the question which we are now to consider to be whether, from the collection of facts thus furnished

by the evidence of the plaintiff and the defendant, it was unreasonable for the jury to infer that there was negligence on the part of the defendant or his son in the manner in which the horse was hitched.   We take the rule applicable in such a state of facts to be that stated by Mr. Chief Justice ERLE in his celebrated judgment in the court of Exchequer Chamber in the case of *Scott v. London & St. Catherine Docks Co.*, 3 Hurl. & C., 596, 601: "There must be reasonable evidence of negligence.   But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."   This statement of doctrine has met with judicial approval in many subsequent cases :   BOVILL, C. J., in *Czech v. General Steam Nav. Co.*, L. R. 3 C. P. 14, 18;   *Trans. Co. v. Downer*, 11 Wall. (U. S.) 129, 134;   *Dougherty v. Missouri Pacific Railroad*, 9 Mo. App. 478, 485.

A horse does not ordinarily get loose, if carefully hitched.  This proposition, which we take to be founded in common experience, renders it impossible for us to say that the conclusion of the jury, that there was negligence, was a violent or unreasonable one, when tested by the rule thus laid down.   There being, then, the admitted fact that the horse escaped from the defendant's personal custody, it remained for the jury to say whether the evidence furnished by the defendant and his son, as to the *manner* in which the horse was hitched, was sufficient to overcome this presumption. There is no rule of law in conformity with which we can say that the jury were bound to believe that the horse had been securely hitched.   In many cases of actions grounded on negligence, the *physical facts* furnish evidence of negligence to go to the jury, in conformity with the expression, *res ipsa loquitur*.   Such, for

instance, was *Hunt v. Missouri Railroad*, 14 Mo. App.
160. See also *Dougherty v. Missouri Pacific Railroad*,
9 Mo. App. 478, where this subject is discussed on the
adjudications at length. Against the physical fact
that the horse got away, the jury had to balance several
probabilities. One of these was that the horse was
taken away by a thief or by a trespasser ; but the cir-
cumstance that the blanket was still on the horse, at the
time of the accident, was one which may have been con-
sidered by the jury as working against this theory, and
we cannot say that it was not properly so considered.
They were also entitled to consider the possibility of
the defendant and his son being mistaken as to the
secure manner in which the horse was hitched. It is
plain that this is not a case where the jury were obliged
to believe the evidence of the defendant, under the rule
in *Lionberger v. Pohlman*, 16 Mo. App. 392 ; for that
rule has no application in a case where there is any sub-
stantial countervailing evidence ; and here, as already
shown, the physical facts afforded *some* countervailing
evidence.

There is no rule of law known to us which obliges
the jury to draw an inference in favor of the theory that
the mare was unhitched by a trespasser, from the fact
that she had performed a journey of nearly a mile,
turning several corners between the time when she
escaped and the time of the accident, and that she was
running in the opposite direction from that of her
departure at the time of the accident. Inferences of
this kind are peculiarly addressed to the common
experience of a body of jurors. If I could speak from
my own experiences in such a case, I should say that,
when a blind horse gets loose, the unexpected usually
happens.

III. The court, of its own motion, gave the follow-
ing cautionary instruction upon the subject of prepon-
derance of evidence : "The court instructs the jury

that the burden of proof is on the plaintiff, to show that the injury complained of was caused by some negligent act of the defendant, or by the negligent act of some one in defendant's employ ; and, unless the jury believe that such negligent act is proven by a preponderance of evidence, and that the injury was the direct result of such act, they will find a verdict for the defendant. By the terms 'preponderance of evidence,' as used in this instruction, is meant evidence which, in your judgment, is entitled to the greater weight in respect of its credibility.   You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them."

The court also refused the following instruction on the same subject, tendered by the defendant:  "The court instructs the jury that the burden of proof is on the plaintiff to show that the injury complained of was caused by some negligent act of the defendant, or by the negligent act of some one in defendant's employ ; and unless the plaintiff establish such negligent act by a preponderance of evidence, and that the injury was the direct result of such act, they will find a verdict for the defendant."

There was no error in these rulings. As a general rule instructions should not be couched in technical legal language, without explaining to the jury the meaning of the technical expressions employed. *Chappell v. Allen*, 38 Mo. 213 ; *Clarke v. Kitchen*, 52 Mo. 316 ; 2 Thomp. Trials, sec. 2327. In *Clarke v. Kitchen, supra*, the use of the expression "preponderance of evidence," without explanation, was criticised.  The explanation which the court in the present case gave of the meaning of this expression was entirely proper. Preponderance, according to a recent work of great merit, means superiority of weight—outweighing (Anderson Dict. of Law, verb, *preponderance*)—and whether the evidence does so preponderate is, of course,

a question which is addressed to the judgment of the jury. The explanation which the court gave of the term placed before their minds, as it should have done, the conception that, in order to find for the plaintiff, the evidence must, in their judgment, have greater weight in respect of its credibility than the countervailing evidence.

The judgment will be affirmed. All the judges concur.