F. H. HAMILTON, Respondent, v. THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 4, 1907.

1. **NEGLIGENCE: Res Ipsa Loquitur: Servant: Passenger: Stranger.** The rule of *res ipsa loquitur* is a presumption raised up from the matter of public policy to the end that there might not be a miscarriage of justice in the instance of injury to persons who otherwise would be powerless to obtain relief, and is an indulgence granted only to certain classes of persons as passengers or strangers, but not to servants of a carrier.

2. ———: ———: ———: **Evidence.** The servant should produce tangible evidence of his master's negligence and cannot rest on the presumption of negligence by reason of the occurrence itself, though the occurrence in some instances supplie, the needed evidence. [Cases harmonized and distinguished.]

3. ———: ———: ———: ———. The evidence relating to an injury resulting from the giving way of a brakebeam is reviewed and held insufficient to show any negligence on the part of the master since the rule of *res ipsa loquitur* is not applicable.

4. ———: **Carrier: Safety Appliances: Appellate Practice.** Where at the trial of a servant against a master there is no attempt to make a case under the Federal Safety Appliance Act it is too late to raise the question in the appellate court which must hear the same case determined in the trial court.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

REVERSED.

*Cyrus Crane* for appellant.

(1) The court erred in overruling the demurrer to the evidence. (a) There was not sufficient evidence to take the case to the jury. Pavey v. Railroad, 85 Mo. App. 218; Kelley v. Railroad, 105 Mo. App. 365; Howard v. Railroad, 173 Mo. 524; Glascock v. Dry Goods Co., 106

Mo. App. 663, and cases cited in opinion; Sacks v. Dolese, 137 Ill. 129, 27 N. E. 62; DeGraff v. Railroad, 76 N. Y. 125; Kinkhead v. Railroad, 22 Ore. 35, 29 Pac. 3; Railroad v. Barrager, — Texas —, 14 S. W. 242; 4 Thompson's Commentaries on Negligence, sec. 4409, p. 510. (b) The maxim *res ipsa loquitur* is not applicable to a case of this kind. Authorities cited above; Shandrew v. Railroad, 142 Fed. 323; McGrath v. Transit Co., 94 S. W. (Mo.) 827. (c) The Federal Safety Appliance Act cannot be relied on to piece out the case, because not pleaded. (2) The court erred in modifying defendant's instruction 6-D. The court erred in modifying defendant's instruction 8-D. Maxey v. Railroad, 95 Mo. App. 303.

*Boyle, Guthrie & Smith* for respondent.

Filed argument.

ELLISON, J.—The plaintiff was engaged in defendant's service as a brakeman on one of its freight trains. The train left a station called Mena at about four o'clock in the morning whence it proceeded on an up-grade to what was called the top of the mountain. From the latter point there was a descending grade, for the distance of near fourteen miles, to a place called Page, where the train was wrecked. The train was equipped with "airbrakes" set from the engine and the cars had also handbrakes connected by a rod with the top of the cars, which were set by brakemen. Shortly before the wreck, plaintiff concluded to set some of the brakes. He tried one or more on different cars and found by giving them trial turns, that the rod and wheel revolved loosely, that is, there was no indication that revolving the brakewheel was having any effect on the brake on the wheels of the car. He passed over to the car which figures in this controversy and gave the brakewheel a preliminary turn to see if it would show itself

to be in working order by tightening up. It appeared to be in good condition and he began to set the brake. As he threw or swung the weight of his body, in his effort to set the brake something connected with the brake appliances suddenly gave way so that the wheel revolved rapidly and he was thrown from the top of the car to the ground and injured. The wreck occurring shortly afterwards, and the wreckage burned, there was no means of ascertaining what caused the wheel and rod to revolve so suddenly and loosely. Nor was there any way to ascertain what was defective, or whether anything was. The judgment in the trial court was for the plaintiff.

Plaintiff concedes that he was unable to make a showing of culpable negligence on defendant's part unless he has done so under the rule of *res ipsa loquitur.* He concedes that except as to his point on the "Federal Safety Appliance Act," to which we shall refer further on, his case was prosecuted solely under that rule.

The decision of the case is thus made to turn upon an application of the rule of *res ipsa loquitur.* There is some apparent diversity in the views which the courts have taken of that rule of evidence. We believe the difference, in most instances, is more apparent that real, and that it comes from differences of expression between those who mean the same thing, and from differences as to whether a given state of facts will justify the application of the rule. There are certain cases where from matters of public policy and the general subservience of justice, the rule will be applied in favor of a plaintiff though he has *not* proven the defendant to be culpable, that is, guilty of negligence. The law has given, in his aid, a rule of presumption that the mere happening of the occurrence which caused his injury was the result of negligence. It may be such an occurrence as may well happen without negligence, yet the presumption in his favor will entitle him to a verdict, unless the defendant comes forward and shows himself free from fault. It

will not do to say, in all cases, that proof of the occurrence *is* proof of negligence, for we know that not to be true. It is proof that negligence may be a fact, but whether actually a fact is conjectural. But the law has raised up a presumption, from matter of policy, to the end that there may not be a miscarriage of justice in the instance of injury to persons who otherwise would be powerless to obtain redress. This presumption is a favor or indulgence of the law granted only to a certain class of injured persons, and it is out of harmony with the general law of evidence, founded on natural justice, that when one accuses another of a wrong he must make proof of the guilt unaided by the silence of the accused. Being an indulgence, the law may offer it to whatever classes of persons it deems sufficiently exceptionally situated as to demand it. Whatever disagreements there may be as to other persons, there seems to be unanimity of opinion that passengers have been selected as a class who may invoke the presumption against the carrier. It is presumption of law and fact. That is to say, if the triers of the fact believe the occurrence is of the kind which the law deems sufficient to raise the presumption and no explanation is given, then they are compelled to presume, by force of the law, that there was negligence.

But the question in this case is, whether an employee may call such presumption to his aid. The plaintiff insists that he may. He contends that it is a rule of evidence with no existing reason why it should not be applicable to a servant as well as a passenger. We think that there is good reason for applying the rule to the latter class and not to the servant. The passenger does not assume risks while the servant does. The instances of non-liability for injury to a passenger (in the absence of contributory negligence) are rare. The instances of liability to the servant are not nearly so frequent. The passenger is helpless and he necessarily places himself in the carrier's hands. He knows nothing of the carrier's

machinery, nor his methods and it is impractical for him to ascertain. Whereas the servant is a part of the carrier's service. He has opportunity in a vastly greater degree than the passenger to ascertain the causes which led to his injury.

The greater part of what we have just stated as to a passenger applies with equal reason to a stranger who may suffer injury; and so we find the courts extending the presumption to him in aid of his evidence against the party he charges with the wrong.

The foregoing considerations have occurred to us as good reason for a distinction between classes of persons. That the law has not granted the benefit of this presumption to a *servant,* and that it holds him to the necessity of an affirmative showing of negligence, is sustained by the great weight of authority. [Patton v. Railway Co., 179 U. S. 658; Sack v. Dolese, 137 Ill. 129; Joliet Steel Co. v. Shields, 146 Ill. 603; Mixter v. Coal Co., 152 Pa. St. 395; Railroad v. Hughes, 119 Pa. St. 301; Redmond v. Lumber Co., 96 Mich. 545; Toomey v. Eureka Works, 89 Mich. 249; Huff v. Austin, 46 Ohio St. 386; Lincoln Ry. Co. v. Cox, 48 Neb. 807; Chicago Ry. Co. v. Kellogg, 55 Neb. 748; Kincaid v. Railroad, 22 Oregon 35; Johnson v. Railroad, 36 West Va. 73; Brownfield v. Railroad, 107 Iowa 254; Benedick v. Potts, 88 Md. 52.]

There is, however, authority based on the best of reason, showing that the servant's case may be made out by mere proof of the occurrence which caused the injury in those instances where the occurrence itself, without the aid of a presumption, shows negligence. In case of a passenger, as we have seen, the occurrence itself may not show negligence and the presumption comes to his relief. But, in the servant's case, if the occurrence is of that nature, which, of itself, shows negligence without the aid of a presumption, he may, as just stated, make a case by showing the occurrence only. Thus, where the

employer tied the knot in a rope used in hoisting a hood for the top of a smokestack, which immediately became untied in the hoisting, it was held in Folk v. Schaeffer, 186 Pa. St. 253 (a court holding strictly to the rule that *res ipsa loquitur* does not apply in favor of servants), that it was sufficient prima facie evidence of negligence. The occurrence shown may be of that nature which could not in any degree of probability have happened without a negligent cause. Its proof is tantamount to the direct and affirmative proof of negligence. We think it would not be necessary that the occurrence should be such as could not by any *possibility* have happened without a negligent cause; for that would be getting beyond the requirement of evidence, especially in civil cases.

We have thus far discussed the case without referring to what has been said of kindred questions in this State. We have done so for the reason that there has been presented to us a number of decided cases, from the Supreme Court and the Courts of Appeals, by the respective counsel which, as each insists, determine the matter in his favor. We find that a number of those to which plaintiff refers are passenger cases, which do not aid us in determining the case of a servant. These are Dougherty v. Railway Co., 9 Mo. App. 478, and 81 Mo. 325; Kelly v. Railway Co., 113 Mo. App. 468; and Hunt v. Railway Co., 14 Mo. App. 160. A number of other cases cited involved the rule as applied to a stranger, viz.: Gannon v. Gas Co., 145 Mo. 502; Hill v. Scott, 38 Mo. App. 370; Seiter v. Bischoff, 63 Mo. App. 157; Gallagher v. Illuminating Co., 72 Mo. App. 576; Cleary v. Transit Co., 108 Mo. App. 433; Tateman v. Railroad, 96 Mo. App. 448. In McCarty v. Railway Co., 105 Mo. App. 596, the plaintiff was not a servant. These also, as we have shown, are not applicable.

But some of plaintiff's citations are cases in which a servant brought the action. They are Blanton v. Dold, 109 Mo. 64; Stoher v. Railroad, 91 Mo. 509; Kelley v.

Railroad, 105 Mo. App. 365. It will however be noticed
that in each of the latter cases it was considered that
proof of the occurrence was, itself, proof of negligence.
In Blanton v. Dold, Judge BARCLAY said "But some ca-
tastrophes are of a nature such as carry, in a mere state-
ment of their occurrence, an implication of some neg-
lect." Stoher v. Railroad contains nothing in aid of
the plaintiff. The engine upon which Stoher was fire-
man was thrown from the track by reason of a small cul-
vert giving way after a heavy rain. The court, in speak-
ing of the evidence in the case in respect to the condi-
tion of the culvert and its sufficiency to carry off the wa-
ters collecting in time of heavy rains, stated that "the
sudden giving way of a part of the structure is, if unex-
plained, some evidence of negligence in its construction."
Nothing was intended by that statement more than that
it was some evidence in the way of a link connected with
the other evidence in the case. In the last of the cases
just cited (Kelley v. Railway Co.) the St. Louis Court of
Appeals, in keeping with the rule stated in Blanton v.
Dold, held that to make the master liable by mere proof
of the occurrence, it must be such an occurrence "as car-
ries proof of negligence on its face."

We do not believe it ought to be said that any of
these cases afford ground for the position that a servant
may be aided by a presumption in making out his case.
It is necessary that he produce tangible evidence of his
master's negligence, and this, as we have just seen, the
occurrence itself may in some instances supply for him.
We think the cases in our appellate courts cannot be car-
ried further than that. In so construing and distin-
guishing them we find them in harmony with the view
taken by the Supreme Courts of Pennsylvania and other
states.

Furthermore, this view is borne out by other cases
in the Supreme Court. Thus in Smith v. Railroad, 113

123 App—40

Mo. 70, 82 (the case of a servant), that court, in an opinion by Judge GANTT, announced, in terms that there is no presumption of negligence of the master in favor of his own employee arising from mere proof of the occurrence. And in Howard v. Railroad, 173 Mo. 524, 531, Judge Fox stated that the fact that a handlebar of a handcar broke and thereby injured the plaintiff, who was a servant, did not necessarily make the master liable, but that it was incumbent upon such servant to show that the appliance was defective and that the master knew, or should have known it. In McGrath v. Transit Co., 197 Mo. 97, the case of a servant, in which Judge GRAVES quotes from Benedick v. Potts, 88 Md. 52, the quotation is to the effect that except in passenger cases the rule of *res ipsa loquitur,* could only be invoked in those instances where the injury arose from some condition or event that is, in its very nature, so obviously destructive of the safety of persons or property, and is so tortious in its quality as, in the first instance, at least, to permit no inference save that of negligence. That reference was to emphasize the court's conviction that a servant could not call upon a presumption to piece out his case, as could a passenger; but that though he could depend upon proof of the occurrence itself, such occurrence must be of such a nature as would itself show negligence. The case is thus in harmony with other cases in that court to which we have referred. In making the quotation it was obviously not intended to infringe upon the rule announced in other cases, above noted, wherein a stranger was the complainant and in whose favor a presumption was indulged.

So we conclude that the real difference between the rule *res ipsa loquitur,* as applied to a passenger (or stranger) and a servant, is that in the case of a passenger a presumption aids the occurrence to speak. While in the case of a servant there is no such aid and the occurrence itself must speak its character. And, at last,

it comes to this, that what is meant by the authorities when it is said that *res ipsa loquitur* does not apply to a servant, is merely that the presumption aiding the occurrence to speak for itself does not apply to his case.

These general observations of the law have been necessary to a proper understanding of our disposition of this case. The occurrence here in controversy was not of such nature as to be classed with those which themselves show they must have happened from a negligent cause for which defendant would be chargeable. When the evidence shows a state of affairs where an inference could be reasonably drawn that the occurrence was due to a cause or causes other than culpable negligence of the defendant, a case is not made for the plaintiff. [McGrath v. Transit Co., 197 Mo. 97.] This occurrence, of course, had a cause. But it by no means follows that such cause was one for which defendant could be charged with liability. If it was something connected with the brake which broke or gave way, it may have been the brake clasp itself, or the chain, or the brake rod, or the wheel at the top with which the brake is set. There is nothing to show which of these it was. Either of them may have had a concealed defect, which inspection, however painstaking, would not have shown, and for the non-discovery of which, defendant could not be blamed. It has always been understood in this State to be the law that for a servant to hold the master liable for an injury received in the course of his employment, he must produce competent affirmative evidence of the master's negligence. [Howard v. Railroad, 173 Mo. 524.] The injury of which plaintiff complains may have been the result of his negligence, or of his own misadventure. His hands may have slipped; his hold on the wheel may have unconsciously loosened as he swung his weight in his effort to tighten the brake. So as he swung his weight around with the wheel, his feet necessarily bearing hard upon the roof of the car, they may

have slipped and caused his fall. Yet, with all these contingencies, and more which might be suggested, we are asked to supply the lack of evidence with a presumption in plaintiff's favor. We do not believe it would be sound policy to carry the rule so far as that; neither could we do so without coming in contact with the views of the Supreme Court.

It is a part of plaintiff's contention now, that he has a case under an act of congress known as the Federal Safety Appliance Act. He claims that though that statute was not, in terms, pleaded. And that though the petition was not drawn with a view to that act, yet, it sets forth facts which fairly put the case within that statute. It is enough to say of this contention that no case was attempted to be made under that statute, that no issue was submitted to the jury in respect thereto, and, so far as the record shows, there was no thought prior to or at the trial, of making a case under that statute. It is familiar practice that the appellate courts of this State refuse to permit the parties to try any other case on appeal than that heard and determined in the trial court.

The case of Voelker v. Railroad, 116 Fed. Rep. 867, in no way supports plaintiff's contention. In that case the federal statute was brought into the case at the trial by instructions from the court to the jury, and the court asked counsel if there was any point upon which they desired instructions. It is stated in the opinion in that case that opportunity was given to the defendant to be heard *at the trial*. No such situation, or condition of case is found in the case at bar. For there is nothing in the case, from opening until close of trial, to suggest, in even a remote way, that a case was being tried under the federal statute. The instructions for plaintiff not only do not indicate such theory, but they show the contrary. They show the case to be based and submitted on negligence of defendant, not in violating a statutory requirement as to the equipment of the engine and cars

with certain brakes, but negligence in permitting the brakes in use to be defective or to become out of repair, and that defendant could have discovered the defects in time to have warned plaintiff, "and that in failing to make such discovery, or to make such repairs, or to give such notice defendant was guilty of negligence," etc.

We are satisfied upon the whole record that the judgment is without legal support and it is accordingly reversed. The other judges concur.